Jeffrey J. Whitehead, Esq.
Nevada Bar No. 3183
Whitehead Law Offices
2431 W. Horizon Ridge Pkwy.
Suite 110
Henderson NV 89052
VOX: (702) 451-7272
FAX: (702) 451-2947
email: jeff@whiteheadlaw.org

*Attorney for Plaintiffs John E. Pimentel, John G. Pimentel and Tina Pimentel*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| **JOHN E. PIMENTEL, JOHN G. PIMENTEL and TINA PIMENTEL,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**COUNTRYWIDE HOME LOANS, INC. ; BANK OF AMERICA, N. A. ; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ; FIVE STAR MORTGAGE COMPANY ; FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC. ; RECONTRUST COMPANY, N. A. ; and JOHN DOES 1 - 1000 UNKNOWN PARTIES,**<br><br>**Defendants.** | **CASE NO.: 2:10-cv-02125-KJD-LRL**<br><br><br><br>**PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND TO SHORTEN TIME FOR BRIEFING AND ISSUANCE OF AN ORDER** |

**MOTION FOR A PRELIMINARY INJUNCTION AND TO SHORTEN TIME**

Plaintiffs**,** by and through their attorney, JEFFREY J. WHITEHEAD, ESQ., of WHITEHEAD LAW OFFICES, hereby move this Honorable Court for a Preliminary Injunction against Defendants

1

preventing Defendants  from proceeding with a mortgage foreclosure on Plaintiffs' real property. The arguments in support of this motion are more fully set forth in the following *Memorandum of Points and Authorities*, which is incorporated herein by reference.

MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF MOTION

Plaintiffs respectfully move this Court for a Preliminary Injunction, pursuant to Fed. R. Civ. P. 65 (a) , enjoining Defendants from taking any further action to foreclose on the Plaintiffs' real property as described in the Plaintiffs' complaint until a final hearing and determination on  the merits of this action.

Unless Defendants are restrained and enjoined by Order of this Court, Plaintiffs will suffer immediate and irreparable harm by losing their real property. Plaintiffs have no adequate remedy at law.

Upon  issuance of the injunction requested, Plaintiffs are ready, willing and able to execute and post a bond payable to Defendants, or to provide other provide other security as appropriate under Fed. Civ. P. 65 (c).

Finally, Plaintiffs respectfully ask the Court, pursuant to Local Rule 6-1 (a),  to shorten the time for briefing that would otherwise govern under Local Rule 7-2, as well shorten the Court's time for  ruling on this Motion **The Defendants are now proposing to sell the Plaintiffs' real property at a scheduled auction sale on _JANUARY 6, 2011._** Therefore, Plaintiffs are in a  state of dire immediate danger, and this is a true emergency.  If Defendants are allowed to proceed, this will inflict irreparable harm on the Plaintiffs. Thus, the Plaintiffs respectfully request that the Court require briefing and please issue an Order ruling on Plaintiffs' Motion for a Preliminary Injunction before their property is scheduled for sale on January 6, 2011.

2

## II.    PROCEDURAL POSTURE

On October 27, 2010, the Plaintiffs, as home mortgage borrowers,  filed their Complaint For Emergency Injunctive and Declaratory Relief and to Stay a Foreclosure Sale in the Clark County District Court of the State of Nevada in connection with a scheduled non-judicial foreclosure of the Plaintiff mortgagors' property at a Trustee's Sale.

After Plaintiffs gave written notice to Defendants, Plaintiffs' request for a Temporary Restraining Order  was assigned to Presiding Civil Judge Elizabeth Gonzalez. Plaintiffs argued that they were likely to succeed on the merits and  that they were  likely to suffer irreparable harm in the absence of injunctive  relief. On November  30, 2010, Judge Gonzalez  issued  a Temporary Restraining Order "restraining all the Defendants from taking any further action to foreclose on the Plaintiffs' property."   [See Exhibit "A."(All Exhibits referenced herein are  attached to the accompanying Affidavit Supporting this Motion)].

The Temporary Restraining Order required the posting of a $ 250.00 bond. Plaintiffs posted that $ 250.00 bond with the State Court on November 30, 2010. (See Exhibit "B".)

Before  that  Temporary   Restraining Order expired, Defendant Bank of America, N. A. filed a Petition for Removal of this case to United States District Court on December 7, 2010. (Dkt. 2.) On December 9, 2010, Plaintiffs filed a Notice of Continuing Injunction asking this Court to not modify or dissolve the Temporary Restraining Order dated November 30, 2010 citing 28 U.S.C.§ 1450. (Dkt. 4.)

28 U.S.C.§ 1450 mandates that "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." Therefore, the Temporary Restraining Order issued in State Court on November 30, 2010 is still binding on the parties hereto unless and until dissolved or modified by the United States District Court.

3

Defendant Bank of America very recently announced on October 8, 2010 that it has halted foreclosure proceedings in all fifty (50) states to review its paperwork for potential flaws in foreclosure documents. *Associated Press* article, October 8, 2010, "Bank of America stops US Foreclosures for Review."

This Federal Court was presented with the exact same situation in *Addison v. Countrywide Home Loans*, et. al., case number 2:10-cv-01304-LDG-PAL. As in this case, Bank of America is also Defendant in *Addison*. In the *Addison* case, with the Honorable Lloyd D. George presiding, this Court issued an Order dated October 20, 2010 (Exhibit "C") as follows:

> Good cause appearing, THE COURT HEREBY ORDERS that the temporary restraining order issued by the state court before removal of this action is extended until the determination of the motion for preliminary injunction (#30). THE COURT FURTHER ORDERS that within fifteen (15) days of this order, defendants shall file a status report regarding foreclosure moratoria that may affect this litigation.

As in *Addison*, Plaintiffs respectfully request that this Court issue an Order extending the Temporary Restraining Order issued by the State Court before removal of this action until the determination of this Motion requesting a Preliminary Injunction. Plaintiffs also respectfully request that this Court include in its Order a requirement that Defendant Bank of America file an updated status report regarding foreclosure moratoria that may affect this litigation.

Such an Order would preserve the status quo and would prevent the irreparable harm to the Plaintiffs that would otherwise ensue if their property were sold by the Defendants before this Court can rule on this Motion for Preliminary Injunction.

## III.   MOST SIGNIFICANT FACTS

On December 9, 2010, Plaintiffs filed a Notice of Continuing Injunction. (Dkt. 4). Moreover, that same day, Plaintiffs faxed to Defendant ReconTrust Company, N. A.,the Trustee proposing to sell Plaintiffs' property at a rapidly approaching auction , the accompanying letter (Exhibit "D") that reads, in pertinent part:

4

1
2
3
4
5
6

Enclosed and served upon you is Plaintiffs' Notice of Continuing Injunction, with its attached Exhibits A to D, that was today filed in Federal Court in Las Vegas, Nevada. Please note that Federal Law (28 U.S.C.§ 1450) states that: "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." Therefore, the enclosed Temporary Restraining Order issued in State Court on November 30, 2010, prohibiting all parties, including ReconTrust Company, from taking any further action to foreclose on this property  is indefinitely binding on all the parties unless and until dissolved or modified by the United States District Court.

7
8

Since this property is scheduled for sale _on January 6, 2011_, your prompt attention and action will be received with gratitude.  Will you kindly place this property on hold status and request Nevada Legal News to postpone the auction of this property?

9
10
11
12
13
14
15
16
17

_**Nevertheless, Defendant ReconTrust Company, N. A. still now has the Plaintiffs' property scheduled for sale on January 6, 2011.**_ That property,  which is the subject of this foreclosure action, is the home and principal residence of Plaintiff John E. Pimentel. Plaintiffs John G. Pimentel and Tina Pimentel are additional owners of record of the property. Plaintiff John E. Pimentel  has resided at the property for a number of years and intends to continue to reside there indefinitely. However, because of the timing of the Defendants' proposed actions, Plaintiffs are in a  state of dire immediate danger, and this is a true emergency.  If Defendants are allowed to proceed, this will inflict irreparable harm on the Plaintiffs.

18
19
20

**IV.   ISSUE:** Whether the Plaintiffs have shown a likelihood of success on the merits and a likelihood of  irreparable harm in the absence of the issuance by this Court of a Preliminary Injunction against Defendants ?

21
22

**V.    SUMMARY OF ARGUMENT**

23
24
25

A preliminary injunction should issue since Plaintiffs have  shown a likelihood of success on the merits and irreparable harm if the Defendants are allowed to foreclose on Plaintiffs' real property.

26
27
28

# VI.   ARGUMENT

The United States Supreme Court recently articulated the standard for obtaining a Preliminary Injunction in *Winter v. Natural Resources Defense Council, Inc.*, __U.S.__, 129 S. Ct. 365, 374, L. Ed.2d 249 (2008): "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Toyo Tire Holdings of America, Inc. v. Continental Tire North America, Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (same). The standard for issuing a preliminary injunction is identical to that for issuing a temporary restraining order. , *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

In this case, the Plaintiffs can not only show a likelihood of success on the merits and irreparable harm if the Defendants are allowed to foreclose; Plaintiffs can also show that a balance of the equities weighs in Plaintiffs' favor and that a Preliminary Injunction is in the public interest. Thus, the Court should grant a Preliminary Injunction to preserve the status quo until  the Court can determine if the Defendants have any legal grounds whatsoever to proceed with foreclosure on Plaintiffs' property .

## A.   Likelihood of Success on the Merits

### 1.   PLAINTIFF'S MOTION SHOULD BE GRANTED SINCE BANK OF AMERICA IS A PARTY.

Defendant Bank of America very recently announced on October 8, 2010 that it has halted foreclosure proceedings in all fifty (50) states to review its paperwork for potential flaws in foreclosure documents. *Associated Press* article, October 8, 2010, "Bank of America stops US Foreclosures for Review."

Here, after arguing that they were likely to succeed on the merits, Plaintiffs secured a Temporary Restraining Order in State Court on November 30, 2010 "restraining all the Defendants from taking any further action to foreclose on the Plaintiffs' property as described in the Plaintiffs'

complaint." The United States District Court for the District of Nevada was very recently presented with the exact same situation in another case handled by Plaintiffs' counsel, *Addison v. Countrywide Home Loans*, et. al., case number 2:10-cv-01304-LDG-PAL. Bank of America is also a Defendant in *Addison*. In the *Addison* case, the Federal Court issued an Order dated October 20, 2010 (Exhibit "C")which Orders as follows:

> Good cause appearing, THE COURT HEREBY ORDERS that the temporary restraining order issued by the state court before removal of this action is extended until the determination of the motion for preliminary injunction (#30). THE COURT FURTHER ORDERS that within fifteen (15) days of this order, defendants shall file a status report regarding foreclosure moratoria that may affect this litigation.

In the Status Report that Defendant Bank of America filed in *Addison*,   Defendant Bank of America concedes that as of November 8, 2010 it has not completed its review of foreclosure procedures in non-judicial foreclosure states including Nevada. (Exhibit "E".) Plaintiffs are also challenging the foreclosure procedures employed in this Pimentel case.

## 2.   THE FORECLOSURE PROCESS HERE IS PROCEDURALLY FLAWED

Plaintiffs purchased the property and executed a promissory note and a deed of trust on June 16, 2003. The deed of trust names Defendant Countrywide as the ostensible lender and Defendant MERS as the alleged "beneficiary." The deed of trust specifically states that the "***lender*** at its option may from time to time remove Trustee and appoint a successor Trustee." ( Exhibit "F", page 14, par. 24.) (Emphasis Added.)

Disregarding this procedure, on May 5, 2009, Defendant MERS (the alleged beneficiary, <u>not</u> the ostensible lender) purported to substitute Defendant ReconTrust as the substitute Trustee. ( Exhibit "G".) Thus, the alleged power of sale exercised by Defendant ReconTrust  is fatally flawed and none of the Defendants is "authorized to make the sale under the terms of the trust deed." Nev. Rev. Stat. § 107.080(4).

Next, Defendant MERS, through its agent Defendant ReconTrust, instituted a non-judicial foreclosure proceeding to foreclose on the deed of trust dated June 16, 2003. The Notice of alleged Default/Election to Sell dated June 11, 2010 states that Defendant ReconTrust is exercising an alleged power to sell plaintiff's property "acting as an agent for the Beneficiary (Defendant MERS) under a Deed of Trust dated 06/16/2003." (Exhibit "H".)

The deed of trust dated June 16, 2003 describes Defendant MERS as an alleged "beneficiary," further states that Defendants MERS allegedly holds "legal title to the interests granted by Borrower," and claims that MERS, "(as nominee for Lender and Lender's successors and assigns), has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property." ( Exhibit "E".)  However, Defendant MERS is not a recognized real party in interest with legal standing to participate in foreclosure proceedings.

Nevada law clearly provides that a mortgage foreclosure sale related to any obligation which is in default must be conducted by a "person authorized to make the sale." Nev. Rev. Stat. § 107.080(4). Here, no Defendant. is "authorized to conduct the sale" because none of them has proper possession of both the original note and deed of trust, because of the improper attempted substitution of Defendant ReconTrust as Trustee, because of the involvement of Defendant MERS, because of an assignment of the deed of trust to a non - party, and because of splittings of the note and deed of trust in this case.

**3.      DEFENDANT MERS CAN NOT ASSIGN PROMISSORY NOTES**

On June 8, 2010, Defendant MERS purported to assign to a non-party, BAC Home Loans Servicing, a Limited Partnership, "all beneficial interest" under the deed of trust "together with the note." ( Exhibit "I".)  Not only did Defendant MERS not hold the note so as to be able to convey the note; but even if it did, the UCC does not recognize an assignment as a valid method of transferring a note. A valid transfer of a note can only be accomplished by negotiation and endorsement. Nev.

Rev. Stat. § 104.3201 and § 104.3204. There is no evidence in the record that Defendant MERS ever held the promissory note signed by Plaintiffs or that Defendant Countrywide ever gave Defendant MERS the authority to transfer the promissory note.   Therefore, such an alleged transfer of the note by assignment was invalid and would have split the deed from the note thereby rendering the debt unenforceable.

Most recently, in another non-judicial foreclosure case involving Defendant MERS, defense counsel finally admitted, "upon repeated inquiry by the Court, that **MERS cannot transfer promissory notes**." Wikipedia, "MERS," § 7.1, 2010 *Foreclosure Crisis - Litigation and Major Legal Decisions* (Emphasis Added) referencing *Delaney v. One West Bank, et. al.*, Federal Court Case No. 3:10-cv-00977-KI  (D. Ore. September 29, 21010) ( Exhibit "J"). The Wikipedia article further explains that in the *Delaney* case:

> On Tuesday, September 28, 2010, Mr. Barnes and Ms. Lemoine defended and argued Motions to Dismiss the borrowers' lawsuit challenging *a nonjudicial foreclosure.* The Motions were filed by the Defendants OneWest Bank and MERS. The action was originally filed in state court where a temporary restraining order was entered stopping the sale. On the eve of the scheduled hearing on the borrowers' Motion for Preliminary Injunction, Defendants OneWest Bank, MERS, and Regional Trustee Services removed the case to Federal Court in an obvious attempt to circumvent the state court injunction hearing. The Federal Court entered an Injunction and scheduled a hearing on the Motions filed by the Defendants.
>
> During the course of the hearing, the Court repeatedly raised the "MERS as nominee" issues to **counsel for the Defendants**, with said counsel finally **admitting,** upon repeated inquiry by the Court, **that *MERS cannot transfer promissory notes.*** The Court denied the Motions to Dismiss and has, by Order, commanded the injunction against the sale to remain in place through the duration of the borrowers' lawsuit. (See the Court's Order dated September 29, 2010 attached as Exhibit "B".)

### 4.    THE APPLICABLE LAW IS THAT GOVERNING NEGOTIABLE PAPER

The dispositive controlling law in this case is set forth in *Giorgi v. Pioneer Title Insurance Company*, 85 Nev. 319, 454 P.2d 104, 105 (1969) where the Nevada Supreme Court clearly held that:

> "In the case of a payment of a mortgage or deed of trust securing a negotiable instrument, the rule suggested by the great weight of authority is that the rights of the parties thereto, as well as third persons, are governed by rules relating to negotiable paper. Under this law the maker of a negotiable note secured by a mortgage or deed of trust cannot discharge his liability by payment to one not the holder or one not authorized by the holder to receive payment. And a debtor is not justified as against an assignee of the security in making payments to a mortgagee or a beneficiary named in a deed of trust who does not have possession of the instrument." (Internal citations omitted.)

In Nevada, pursuant to its adoption of Article 3 of the Uniform Commercial Code, the only persons entitled to enforce a negotiable instrument are: "(a) The holder of the instrument; (b) A nonholder in possession of the instrument who has the rights of a holder." Nev. Rev. Stat. § 104.3301(1).

The term "holder" is defined as : "The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." Nev. Rev. Stat. § 104.1201 (2) (u) (1). Similarly, *Black's Law Dictionary*, p. 800 (9th Ed. 2009) defines "holder" as: "A person who has legal possession of a negotiable instrument and is entitled to receive payment on it."

Nevada law clearly provides that a mortgage foreclosure sale related to any obligation which is in default must be conducted by a "person authorized to make the sale." Nev. Rev. Stat. § 107.080(4). Clearly, no entity is "authorized to make the sale" unless that entity came into possession of a negotiable instrument by proper legal means and is entitled to receive payment on it. Pursuant to these laws, none of the Defendants is entitled to enforce and collect on the Plaintiffs' promissory note and deed of trust according to the proof , and lack of proof, presented to this Court.

10

The often repeated claim by Defendants that no there is no requirement under Nevada law  to "show me the note" is simply wrong: Any party  against  whom  a  negotiable instrument is being enforced is entitled to demand that the claimant "exhibit the instrument" it seeks to enforce. Nev. Rev. Stat. § 104.3501 (2) (b) (1). *Mckay v. Capital Reserve Company, Ltd*., 327 Ark. 737, 940 S.W.2d 869, 871 (Ark. 1997) [In action to foreclose mortgage, assignee of mortgage could not prevail in enforcing promissory note by using <u>duplicate</u> of note; rather, assignee was required to either produce <u>original</u> note or satisfy Uniform Commercial Code (UCC) requirements for lost negotiable instruments] Moreover, "if presentment is made on behalf of another person, (the proponent must provide) reasonable evidence of authority to do so." Nev. Rev. Stat. § 104.3501 (2) (b) (2).

None of the Defendants has proferred the required forms of evidence in this case. Not only has no original note been produced; but the Defendants have not provided proper evidence of the chain of title and authority by any entity to act on behalf of any legal holder of the note.

### 5.    NEITHER MERS NOR ITS AGENTS HAS STANDING TO FORECLOSE

 Moreover, "the movant,  MERS in this case, bears the burden of proving it is the real party in interest." *Mortgage Electronic Registration Systems, Inc. v. Chong*, 2009 WL 6524286, p. 3  (D. Nev. December 4, 2009); *Coyne v. American Tobacco Co.*, 183 F.3d 488, 492 (6th. Cir. 1999) ( a party asserting a right to relief "bears the burden of demonstrating standing and must plead its components with specificity").

Here, although MERS is named purportedly as a "nominee Beneficiary" in the deed of trust, MERS is not a real party of interest in the mortgage on the property and has no legal standing related to the property. In *Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking & Finance*, 270 Neb. 529, 704 N.W.2d 784 ( 2005), ***MERS admitted that "it does not own the***

*promissory notes secured by the mortgages and has no right to payments on the notes.*"*Id..* at 787. (Emphasis added.) Therefore, the Nebraska Supreme Court held, "MERS has no independent right to collect on any debt because MERS itself has not extended any credit, and none of the mortgage debtors owes MERS any money." *Id..* at 788. ***Therefore, Defendant MERS cannot "assign" any alleged right to payment that it itself does not have.***

As the Nevada Bankruptcy Court held in *In Re Mitchell*: "**MERS** does not have standing merely because it is the alleged beneficiary under the deed of trust. It **is not a beneficiary** and, in any event, the mere fact that an entity is named beneficiary of a deed of trust is insufficient to enforce the obligation." *In Re Mitchell*, 2009 WL 1044368, p. 4 (Bkrtcy. D. Nev. March 31, 2009).  (Emphasis added.).

"If presentment is made on behalf of another person, (the proponent must provide) reasonable evidence of authority to do so." Nev. Rev. Stat. § 104.3501 (2) (b) (2) As the Nevada United States District Court held in *Mortgage Electronic Registration Systems, Inc. v. Medina*: "Since ***MERS provided no evidence that it was the agent or nominee for the current owner of the beneficial interest in the note***, it has failed to meet its burden of establishing that it is a real party in interest with standing." *Mortgage Electronic Registration Systems, Inc. v. Medina*, 2009 WL 4823387, p. 3 (D. Nev. December 4, 2009). (Emphasis added.) The same situation is present here. ***Any entity acting as the "agent" for Defendant MERS, which here is Defendant ReconTrust, has no greater rights than Defendant MERS has in any transaction. And here Defendant MERS has no rights whatsoever.***

Defendant **MERS "is a nominee only, holding title to the deed of trust but *not the note*.**" Mortgage Electronic Registration Systems, Inc. v. Estrella, 390 F.3d 522, 525 (7th Cir. 2007) (Emphasis Added). As a mere nominee, *Defendant MERS* cannot prosecute foreclosures because it does not own the note or deed of trust and its *purported assignments of notes mortgages are also ineffective*. LaSalle Bank v. Lamy, 824 N. Y. S. 2d 769 (Sup. Ct. 2006).

1    Thus, in this case,  when Defendant MERS' purported to assign to a non-party, BAC Home

2    Loans Servicing, a Limited Partnership, "all beneficial interest" under the deed of trust "together with

3    the note." (Exhibit "I"), Defendant MERS had no beneficial interest to convey unless it held the note

4    which it did not. Not only did Defendant MERS not hold the note so as to be able to convey the note,

5    but even if it did,  the UCC does not recognize an assignment as a valid method of transferring a note.

6    A valid transfer of a note can only be accomplished by negotiation and endorsement. Nev. Rev. Stat.

7    § 104.3201 and § 104.3204. ***Thus, no transfer of any rights whatsoever under the note  occurred.***

8

9    As the Court noted in *In Re Vargas,* 396 B. R. 511, 516 (C.D. Cal. 2008). "***MERS is not in the***

10   ***business of holding promissory notes."*** *Id.* at 520. (Emphasis added.) In fact, MERS makes it money

11   by only tracking the transfers of security instruments such as promissory notes. *Mortgage Electronic*

12   *Registration Systems, Inc. v. Nebraska Department of Banking & Finance*, 270 Neb. 529, 704 N.W.2d

13   784, 785 (2005);*In re: Mortgage Electronic Registration Systems Litigation,* 659 F. Supp. 1368, 1370

14   (MDL December 7, 2009).

15

16   In very well reasoned opinions, the Honorable Linda B. Riegle of the Nevada Bankruptcy Court,

17   held, in the cases of  *In Re Mitchell*, 2009 WL 1044368, pp. 5-6 (Bkrtcy. D. Nev. March 31, 2009) and

18   *In Re Hawkins*, 2009 WL 901766, pp. 5-6 (Bkrtcy. D. Nev. March 31, 2009) that : "Under Nevada law

19   a negotiable promissory note is enforceable by: (1) the holder of the note, or (2) a nonholder in

20   possession of the note who has the rights of a holder. N.R.S. § 104.3301. Thus if MERS in not the

21   holder of the note, then to enforce it MERS must be a transferee in possession who is entitled to the

22   rights of a holder or have authority under state law to act for the holder." In *Mitchell* and *Hawkins*, the

23   Nevada Court found that MERS was neither the holder of the notes nor a nonholder in possession of

24   the notes so as to be able to enforce them.

25

26   Since  there is no evidence in the record that Defendant  MERS ever held the promissory note

27   signed by Plaintiff John E. Pimentel or that Defendant Countrywide Home Loans  ever gave Defendant

28   MERS the authority to transfer the note, any attempt to do so was a legal nullity and the language in

13

the deed purporting to grant Defendant MERS an alleged right to foreclose on and sell the property is legally ineffective. *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W. 619, 623-624 (Mo. App. 2009) (MERS never held the promissory note; thus its alleged assignment was ineffectual); *In Re Wilhelm*, 407 B. R. 392 (Bkrtcy. D. Idaho 2009) (standard mortgage note language does not expressly or impliedly authorize MERS to transfer the note); *Saxon Services, Inc. V. Hillery*, 2008 WL 5170180 (N. D. Cal. 2008) (MERS purportedly assigned both the deed of trust and the promissory note; "However, there is no evidence of record that establishes that MERS either held the promissory note or was given the authority ...to assign the note."); *Graham v. Oliver*, 659 S.W. 2d 601, 603 (Mo. App. 1983) (foreclosure sale invalid "when the person causing the foreclosure does not hold title to the secured note").

Numerous ***Nevada United States District Court cases hold that "a foreclosure (is) void when a party attempts to foreclose without holding title to the underlying promissory note."*** *Simon v. Bank of America*, 2010 WL 2609436, p. 7 (D. Nev. June 23, 2010); *Gomez v. Countrywide Bank, FSB,* 74 Fed. R. Serv. 3d 1339, 2009 WL 3617650, p. 6 (D. Nev. October 26, 2009); *Coward v. First Magnus Financial Corp.,* 2009 WL 3367398, p. 6 (D. Nev. October 14, 2009). (Emphasis added.) The Nevada Federal Courts refer to this as a "common sense rule" since it prevents a borrower from facing double financial jeopardy – the possibility of having to defend against two or more competing claims to a single mortgage debt.

Plaintiffs' position is clearly supported by the Nevada United States District Court's holding in *Weingartner v. Chase Home Finance, LLC*, 702 F. Supp.2d 1276, 1283 (D. Nev. March 15, 2010).

***Defendants seem content to let their argument rest dispositively on their position that MERS, by the mere language in the deed of trust, has the authority to transfer the beneficial interest in the underlying debt. This is rejected***. Such a result would allow the beneficial interest in a promissory note to become detached from the note itself, potentially producing two rival claimants to the same underlying debt wherever a lender assigns MERS as "nominee beneficiary" on a deed of trust, and the lender and MERS each subsequently transfer the beneficial interest to different parties– the lender via negotiation of the note, and MERS via

14

purported assignment of the beneficial interest under the deed of trust. (Emphasis Added)

As here, in *Weingartner v. Chase Home Finance, LLC,* 702 F. Supp.2d. 1276 (D. Nev. 2010) the United States District Court for the District of Nevada ruled that Plaintiffs stated a cognizable claim for the tort of wrongful foreclosure since ***MERS 'beneficial interest' is nonexistent unless MERS holds the underlying debt, and it does not."*** *Weingartner,* 702 F. Supp.2d at 1282. (Emphasis added.) Thus, in this case Defendant ReconTrust is not "authorized to make the sale." under Nev. Rev. Stat. § 107.080(4) when purporting to exercise a power of sale "acting as agent for the Beneficiary (Defendant MERS) under a Deed of Trust dated 06/16/2003." ( Exhibit "G").

Similarly, here, there were fatal errors in the procedures and purported assignment utilized by the Defendants as pointed out by the Court in *Weingartner*, 702 F. Supp.2d at 1281-1282:

> According to Defendants, the following transactions have occurred since Plaintiffs mortgaged the property: (1) Plaintiffs defaulted; (2) MERS assigned "all beneficial interest" in the deed of trust to U.S. Bank National Association ("U.S. Bank") as trustee for Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2006-HE3 ("Citigroup"), ( *see id.,* Ex. C); (3) U.S. Bank substituted Cooper for itself as trustee, ( *see id.,* Ex. D); (4) Cooper recorded the Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of Trust, ( *see id.,* Ex. E). There are at least three problems with the above sequence of events. First, **MERS is not a beneficiary and does not have the ability to transfer the beneficial interest in a promissory note without more evidence of its agency in this capacity than being named as a nominee on a deed of trust.** Second, even if MERS were a beneficiary, or the scope of its agency for the beneficiary extended to the transfer of the beneficial interest without the principal's signature, the form of transfer here is strange and shows a lack of knowledge of, or purposeful disregard for, basic legal principles. MERS purported to transfer the beneficial interest in the loan not to the principal, Citigroup, who then named U.S. Bank as its trustee. No, the language of the purported transfer indicates that MERS intended to transfer the beneficial interest to the new trustee itself, U.S. Bank, but "as trustee" for another. This language is at odds with itself. If U.S. Bank was to have the beneficial interest, then why is it called a trustee for another? A trustee is one who holds bare legal title and disposes of property for the benefit of the beneficiary. It is, of course, possible to hold property in trust for oneself, but that does not appear to be the intent here, and U.S. Bank never made any declaration indicating creation of such a trust. The beneficiary of the Note here was clearly meant to be the Citigroup mortgage-backed securities fund, with U.S. Bank as its trustee. At most, this transaction would be effective to transfer any beneficial

15

interest MERS had to the Citigroup fund. But, as noted above, **MERS did not have the ability to transfer the beneficial interest in the first place.** Third, even assuming that MERS properly transferred its beneficial interest to Citigroup and that Citigroup affirmed U.S. Bank as its trustee, a trustee such as U.S. Bank does not under established principles of trust law have the ability to delegate the discretion entrusted to it by abdicating and naming another in its stead. MERS may do this as a lender's nominee, because its agency extends to substitution of trustees. But a mere trustee such as U.S. Bank cannot replace itself of its own volition.

*In summary, Cooper may have wrongfully foreclosed.* Nothing in the current pleadings indicates when or how Cooper properly obtained the ability to foreclose. U.S. Bank as trustee did not have the ability to replace itself as trustee with Cooper, even assuming U.S. Bank had been the trustee when it purported to do this, which is doubtful because of the odd nature of the purported transfer of interest from MERS to U.S. Bank. *MERS* did not appear to intend to simply replace Fidelity as trustee with U.S. Bank, but rather *appears to have intended to transfer the beneficial interest to U.S. Bank "as trustee" (which it cannot do).MERS' "beneficial interest" is nonexistent unless MERS holds the underlying debt, and it does not.* (Emphasis added.)

## 6.    DEFENDANTS ARE ENGAGED IN A WRONGFUL FORECLOSURE

Plaintiffs are  not here to discuss mortgage debt in the abstract or in only general terms; because it is crucial to distinguish  the particular debt in question as it relates specifically to these Defendants and their alleged ability to enforce it . When viewed in this manner, it is clear that the Defendants are engaged in a wrongful foreclosure and that the Plaintiffs are not in default vis a vis the Defendants in this mortgage proceeding.

Plaintiffs are  not trying  to  "get a free house." Since acquiring the property in July of 2002, the Plaintiffs have made substantial payments on the subject property. They paid approximately $ 105,000.00 in monthly payments for the mortgage and real estate taxes , made improvements in the amount of approximately $ 18,000.00 to the property, and paid Home Owners Association dues of $ 4,000.00. Plaintiffs have made a substantial investment of approximately  $ 113,590.00.

By contrast, Defendants have not yet met their legal burdens of proving that  they own  both the promissory note and the deed of trust and that the note and the deed were never and are not now separated so as to give them proper legal standing to foreclose. Thus, unless and until they present such

16

adequate proof, assuming they even can, it is really they the Defendants who are attempting to acquire a house that they are not legally entitled to possess by proceeding with a wrongful foreclosure.

**"In a mortgage foreclosure action, to make out its prima facie case, the foreclosing party had to prove by a preponderance of the evidence that it was the owner of the note _and_ mortgage and that the [defendant] had defaulted on the note."** _Franklin Credit Mgmt. Corp. v. Nicholas_, 73 Conn. App. 830, 812 A.2d 51, 57-58 (2002).

Defendants are attempting to foreclose on the Plaintiffs' property. In order to do so, however, it is the Defendants who have the burden of proving that they own _both_ the promissory note and the deed of trust _and_ that the note and the deed were _never_ and are _not now_ separated. Here, the Defendants have not met this burden. Thus, there is no breach of condition or failure of performance by the Plaintiffs vis a vis these Defendants that authorizes them to foreclose. And unless and until the Defendants present such proof, under Nevada law, the Plaintiffs' duty to make mortgage payments is suspended .Thus, the Defendants are engaged in a wrongful foreclosure on Plaintiffs' property.

Wrongful foreclosure is an actionable tort in Nevada. "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition of failure of performance existed." _Collins v. Union Fed. Sav. & Loan Ass'n,_ 99 Nev. 284, 662 P.2d 610, 623 (1983).

In the _Collins_ case, where the Nevada Supreme Court recognized the tort of wrongful foreclosure, the Court said "the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." _Collins,_ 662 P.2d at 623. In that case, "Collins suspended payment" on his mortgage and "made a conscious choice not to pay." _Id._ at 614. Nonetheless, the Nevada Supreme Court held that genuine issues of material fact existed, thereby precluding summary judgment, as to whether the Plaintiff was legally in "default" since the Defendants were arguably not properly performing some of their duties regarding interest pursuant to the mortgage. _Id._ at 623.

17

The same  situation is present here where the Defendants have not met their burden of proving that they own both the promissory note and the deed of trust and that the note and the deed were never and are not now separated before commencing foreclosure  proceeding against the Plaintiffs. Such proof is a condition precedent to the Plaintiffs' duty to make mortgage payments to these Defendants. Thus, Plaintiffs here, like the Plaintiff in *Collins,* are not in default.

A default is defined as a  " failure to pay a debt when  due." *Black's Law Dictionary*, p. 480 (9th Ed. 2009). "Due" means the debt is "immediately enforceable." *Black's Law Dictionary*, p. 574 (9th Ed. 2009).  Where an alleged debt is not immediately enforceable by a particular party at a particular time, there is no default.  Thus, Plaintiffs are not in"default", as it respects the Defendants, on the mortgage loan in this case.  That is because Defendants have not  met their burden of proving that they own the debt. And as shown herein, since an enforceable secured  mortgage requires two (2) documents – *both a promissory note and a deed of trust to be held by the same person* – when one person holds only the note and another person holds only the deed, there can be no default or power to foreclose on a mortgage as a matter of law.

**7.      ANY SEPARATION OF THE PROMISSORY NOTE FROM THE DEED OF TRUST RENDERS THE DEBT UNENFORCEABLE.**

Plaintiffs' promissory note was separated from their  deed of trust by being sold in to a Wall Street securitization scheme that fractionalized ownership of the debt over many different persons and entities in many different countries in the world. Reliable estimates show that approximately  70 percent of mortgage loans have been securitized which means that the Plaintiffs' note was separated from their deed of trust.

Reliable e stimates show that approximately  70 percent of mortgage loans have been securitized which means that the bank "transfers  the loan into a pool of loans that are ultimately sold to  investors—a process known as securitization." *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System,* Christopher L. Peterson, Associate Dean of Academic

Affairs and Professor of Law, University of Utah, S.J. Quinney College of Law, published in the documents of the Social Science Research Network, New York, NY (Document available electronically at: http://ssrn.com/abstract=1469749, October 5, 2009). "During the 1990s, securitization exploded as the primary source of capital for home equity lending. By 2005, nearly 70 % of all residential mortgage loans were securitized. The percentage for subprime residential mortgage loans is even higher." *Foreclosures: Defenses, Workouts and Mortgage Servicing*, § 1.2.2 "Securitiaztion of Mortgage Loans," p. 5 (2nd Ed. Aug. 2007) (Citations Omitted).

Here the Plaintiffs' note was, in fact, separated from their deed of trust when Defendant MERS assigned the deed to a non- party, BAC Home Loans Servicing, LP, on June 8, 2010. Moreover, given the nature of the mortgage secondary market industry in the last two decades, additional, separate transfers of the note and deed of trust in this case very likely  occurred without any documents being filed  in the Clark County Recorder's Office.

Dispositively, however, *any* separation of the note and deed of trust renders the debt *unenforceable.* In very well reasoned opinions, the Honorable Linda B. Riegle of the Nevada Bankruptcy Court held, in the cases of  *In Re Mitchell*, 2009 WL 1044368, pp. 5-6 (Bkrtcy. D. Nev. March 31, 2009) and *In Re Hawkins*, 2009 WL 901766, pp. 5-6 (Bkrtcy. D. Nev. March 31, 2009) that :

A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust. **When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured."** *Restatement (Third) of Property (Mortgages)* § 5.4 cmt. a (1997). **<u>A person holding only a note lacks the power to foreclose because it lacks the security, and person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it.</u>** See *Restatement (Third) of Property (Mortgages)* § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt obligation, has a worthless piece of paper." 4 Richard R. Powell, *Powell on Real Property*, § 37.27[2] (2000). (Emphasis Added)

19

As the Supreme Court of Kansas recently held: "Indeed, in the event that a mortgage loan somehow separates interests of the note and deed of trust, with the deed of trust lying with some independent entity, the mortgage may become *unenforceable*." *Landmark Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158, 166-167 (2009) (Emphasis Added). The *Kesler* Court further held that:

> **The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note.** Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. **The person holding only the deed of trust will never experience default** because only the holder of the note is entitled to payment of the underlying obligation. **The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust.** *Id., citing Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W. 3d 619, 623 (Mo. App. 2009). (Emphasis Added).

In *Coward v. First Magnus Financial Corp.,* 2009 WL 3367398, p.7 (D. Nev. October 14, 2009), a recent case that also involved MERS and is similar to this case, the United States District Court for the District of Nevada held that the Plaintiff in that case  stated a cognizable claim for the tort of  wrongful foreclosure:

> Plaintiff's claim is that some entity initiated foreclosure without possessing any interest in the underlying debt via the promissory note or without being a nominee of such party, who is entitled to foreclose. Viewed in the light most favorable to Plaintiff, the pleadings indicate that some party is in the process of foreclosing, or has now foreclosed, on the property, and that it may not have possessed any interest in the underlying debt or been the nominee of such party. The Seventh Cause of Action therefore *makes out a cognizable claim*. (Emphasis Added).

For all of these reasons, Plaintiffs have stated a likely successful claim for the tort of  wrongful foreclosure and the Plaintiffs' Motion for a Preliminary Injunction should, therefore,  be granted.

**B.**     **Likelihood of Immediate and Irreparable Harm if Injunction is Not Granted**

The Nevada Supreme Court has consistently held that potential loss of real property through foreclosure proceedings constitutes irreparable harm so as to require the granting of a restraining Order to prevent such loss.

In *Dixon v. Thatcher*, 103 Nev. 414, 742 P.2d 1029 (1987), the Court held that: "Because real property and its attributes are considered unique and loss of real property rights generally results in irreparable harm, the District Court erred in holding otherwise." The *Dixon* Court reversed the District Court, holding that it abused its discretion in denying the borrowers' motion for a restraining Order, since "compensatory damages do not provide an adequate remedy in this situation." Dixon, 742 P.2d at 1030.

Similarly,  in another foreclosure case, the Clark County District Court refused to restrain foreclosure of two deeds of trust covering certain realty. *Nevada Escrow Services, Inc. v. Crockett,* 91 Nev. 201, 533 P.2d 471 (1975). The District Court denied injunctive relief, ruling that there was allegedly an adequate remedy at law, namely, money damages.  *Nevada Escrow*, 533 P.2d at 472. The Nevada Supreme Court reversed, and held that the District Court abused its discretion in denying the Plaintiffs' request for a restraining Order, since where title to realty is involved, "the equitable remedy is so far superior" that the legal remedy was inadequate. Id.

Indeed, the loss of any real property rights generally results in irreparable harm. *Leonard v. Stoebling*, 102 Nev. 543, 728 P.2d 1358 (1986) (view from home is unique; injunction properly issued to preserve view) ; *Dickstein v. Williams*, 93 Nev. 605, 571 P.2d 1169 (1977) (enforcing restrictive covenant by requiring removal of home addition).

Moreover, should any true holder in due course come forward at any later date and demand satisfaction in this case, Plaintiffs here run the risk of potentially being placed in a position of "double

21

financial jeopardy" if the Court should allow the current Defendants to wrongfully foreclose and take Plaintiffs' property. Thus, in this case if the Plaintiffs paid anyone other than a true holder in due course, the Plaintiffs could be exposed to double liability. *Madison-Hunnewell Bank v. Hurt*, 903 S.W.2d 175, 179.(Mo. Ct. App. 1995) ("The rule is that the payor of a note exposes himself to double liability if he delivers his payment to someone other than the holder"). Plaintiffs would then incur extra, unnecessary damages and would suffer irreparable harm as a result.

The Court should issue a Preliminary Injunction to prevent an immediate foreclosure sale that would cause irreparable harm to the Plaintiffs.

## C.    The Balance of Equities Weighs in Plaintiffs' Favor

The Defendants have nothing to lose in this case since the Defendants did not loan any money of their own and/or have already been fully repaid out of the sale proceeds by selling the original obligation in this matter to other third parties through a securitization scheme devised by investment bankers of Wall Street. Defendants will not be prejudiced by the granting of this Motion.

By contrast, Plaintiffs have much to lose economically and emotionally by being evicted out of the property, losing the equity of the down payment, and losing the amortized equity from the regular monthly payments and improvements to the property. Additionally, Plaintiffs would bear the physical and emotional distress of moving, finding new lodging, and all the monetary expenses attendant thereto. Plaintiffs do not have the means to carry on if Plaintiffs are to bear the cost and damage of the Defendants' wrongful actions as a means to only increase their rogue corporate profiteering at the expense of innocent, unwary individuals. Any wrongful foreclosure and eviction will inflict irreparable injury upon the Plaintiffs through the loss of real property.

When the relative interests of all parties are considered – the Plaintiffs would suffer irreparable harm by forfeiting title to the real property, whereas the Defendants' questionable rights, if any, would be simply delayed until the Court can finally determine the true rights and liabilities of all parties – the balance of the equities clearly weighs in Plaintiffs' favor.

22

### D.    An Injunction is in the Public Interest

Good public policy, equity and benefit to society will be supported by granting this motion.

First, this motion  involves the title to real property, which is unique. Injunctive relief is therefore entirely appropriate based on principles of equity. Moreover, the principles at issue here do not simply concern only the parties to this case. People should not have their property wrongfully taken from them and have the deeds to their property unnecessarily clouded . The Defendants should not be allowed to proceed with foreclosure given their lack of legal standing.

### E.    Bond

Based on the merits, based on the public policy involved in  this case -- and because the subject real property that the Defendants are trying to acquire  is in fact more than sufficient collateral for any claims of the Defendants – -no bond beyond the $ 250.00 required by the State Court Temporary Restraining Order, and already paid by the Plaintiffs,  should be required. Plaintiffs have already invested at least $ 113,590.00 in the subject property and  have no interest in diluting their  interest therein because Plaintiff John E. Pimentel  resides there  and all Plaintiffs desire to keep the property in good condition.

1

2

3

4

5    DATED December 16, 2010

6                                                          Respectfully submitted,

7                                                          WHITEHEAD LAW OFFICES

8

9                                                          _____/s/ Jeffrey J. Whitehead_____

10                                                         Jeffrey J. Whitehead, Esq.

11                                                         Nevada Bar No. 3183

12                                                         Whitehead Law Offices

13                                                         2431 W. Horizon Ridge Pkwy.

14                                                         Suite 110

15                                                         Henderson NV 89052

16                                                         VOX: (702) 451-7272

17                                                         FAX: (702) 451-2947

18                                                         email: jeff@whiteheadlaw.org

19                                                         *Attorney for Plaintiffs John E. Pimentel, John*

20                                                         *G. Pimentel and Tina Pimentel*

21

22

23

24

25

26

27

28
                                        24

# CERTIFICATE OF SERVICE

It is hereby certified that the foregoing PLAINTIFFS' EMERGENCY MOTION FOR A PRELIMINARY INJUNCTION AND TO SHORTEN TIME FOR BRIEFING AND ISSUANCE OF AN ORDER  was sent <u>December 16, 2010</u>  to counsel, listed below, through the Court's electronic service system:

Aaron M. Waite, Esq.
Juliana M. Hofsommer, Esq.
THE COOPER CASTLE LAW FIRM
5275 South Durango Drive
Las Vegas, Nevada 89113
E-Mail: jhofsommer@ccfirm.com

X☐ Via U.S. Mail, by depositing a true and correct copies of same in the United States Mail, postage prepaid at Henderson, Nevada, to the persons at the addresses listed below:

- MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,  1901 East Vorhees Street, Suite C, Danville, Illinois 61834

- FIVE STAR MORTGAGE COMPANY, 8965 South Pecos Road, Suite # 10A, Henderson, Nevada 89074.

- FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC. , 500 North Rainbow Blvd., Suite 100, Las Vegas, Nevada 89107.

- RECONTRUST  COMPANY,  N.A.,  2380 Performance Drive, Richardson, Texas 75082.

_____/s/ Charles R. Powell_____

WHITEHEAD LAW OFFICES

25